E. A. Roberts v. Commissioner.
Roberts v. Commissioner
Docket No. 54238.
United States Tax Court
T.C. Memo 1957-145; 1957 Tax Ct. Memo LEXIS 101; 16 T.C.M. (CCH) 625; T.C.M. (RIA) 57145; July 31, 1957
William H. Armbrecht, Jr., Esq., Merchants National Bank Building, Mobile, Ala., for the petitioner. Lester R. Uretz, Esq., for the respondent. TURNER
Memorandum Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioner for the taxable years 1945 and 1946 in the respective amounts of $42,967.50 and $38,391.44. The only question remaining for decision is the amount of the net operating loss sustained by petitioner during the year 1947, which is available to him as a carry-back to the years 1945 and 1946, under section 122 of the Internal Revenue Code of 1939. All of the facts have been stipulated and are so found. Petitioner is an individual, residing in Mobile, Alabama. He filed his individual income tax returns for 1945 and 1946 with the collector of internal *102 revenue for the district of Alabama. Petitioner and his wife, Belle G. Roberts, filed a joint income tax return for the year 1947 with the collector of internal revenue for the same district. During the years 1945, 1946 and 1947, and for many years prior thereto, the petitioner was chief executive of the Waterman Steamship Corporation, a position designated as "Chairman of the Corporation." In addition, he served as officer and director of several other corporations during the said years. Petitioner's total income for the year 1947 was as follows: Amount
Salary, bonuses and director's fees
$200,881.00
Dividends
167,104.60
Interest
447.53
Capital gain
110,919.99
Total income
$479,353.12
The income of petitioner's wife, Belle G. Roberts, for 1947 was as follows: Amount
Rents
$14,033.25
Dividends
30,151.80
Interest
5.00
Total income
$44,190.05
The total income of the petitioner and his wife for 1947, in the amount of $523,543.17, was reported on their joint income tax return for that year. During 1947, and for some time prior thereto, petitioner owned and was engaged in the business of operating in his individual capacity *103 (a) a hotel and golf course, which he operated under the trade names of Grand Hotel and Point Clear Development Company; (b) a farm, which he operated under the trade name of Grand Hotel Farms; and (c) a seafood business, which he operated under the name of Coffee Island Company. During 1947 petitioner incurred total operating losses in the amount of $231,085.15, as follows: Operating Loss
Grand Hotel and Point Clear
Development Company
$213,227.25
Grand Hotel Farms
17,492.19
Coffee Island Company
365.61
Total Operating Loss
$231,085.05
During the year 1947 petitioner sold the hotel buildings, land and equipment used in the operation of his hotel business for $854,769.27. This resulted in a loss to him of $615,664.50. Additional costs and expenses of the sale in the amount of $2,226.74 increased his loss from the sale of this property to $617,891.24. Petitioner did not sell the golf course, including the land, buildings, equipment and fixtures used in connection therewith, but retained and leased it to a corporation known as Lakewood Golf Club. He also retained and continued the operation of the Grand Hotel Farms. On January 19, 1948, the petitioner *104 filed an Application for Tentative Carry Back Adjustment, Form 1045. In the computation supporting his application for carryback to the years 1945 and 1946, petitioner treated all of the 1947 income from salaries, bonuses, director's fees, dividends, interest, rents and capital gain as nonbusiness income. This income was set off against the nonbusiness loss suffered in the sale of the hotel, leaving the total net operating loss incurred in the operation of the hotel and golf course, the farm and the seafood business intact and available for carry-back purposes to 1945 and 1946. The respondent has determined that the income of the petitioner from salaries, bonuses and director's fees and of his wife from rentals constitutes income from the operation of a trade or business, within the meaning of section 122(d)(5) of the Internal Revenue Code of 1939, [1] and consequently must be offset against the net operating loss rather than the nonbusiness loss. *105 In principle, the question presented here was decided in Anders I. Lagreide, 23 T.C. 508, and based on our disposition of that case, the decision here is for the respondent. Decision will be entered for the respondent. Footnotes
1. SEC. 122. NET OPERATING LOSS DEDUCTION. * * *
(d) Exceptions, Additions, and Limitations. - The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows: * * *
(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection.↩